# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SAMUEL D. FORD,                                )<br>                                                               )<br>                        Plaintiff,             )<br>                                                               )   **CIVIL ACTION**<br>v.                                                           )<br>                                                               )   **No. 13-2407-JWL**<br>CAROLYN W. COLVIN,                     )<br>**Acting Commissioner of Social Security,**  )<br>                                                               )<br>                        Defendant.         )<br>_____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.      Background

Plaintiff applied for SSD and SSI, alleging disability beginning March 2, 2010. (R. 12, 125-35).  In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He argues that the

decision is not supported by substantial record evidence because the Administrative Law

Judge (ALJ) gave erroneous reasons to discount Plaintiff's credibility; because the ALJ

did not adequately account for Plaintiff's difficulty concentrating as opined by his treating

physician, Dr. Schroeppel; because the ALJ erroneously rejected the opinion of Plaintiff's

counselor that he is moderately limited in the abilities to interact with the public, to accept

instruction and respond appropriately to criticism from supervisors, and to get along with

coworkers or peers; and because the ALJ failed to adequately develop the record

regarding mental limitations.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether she applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind

might accept to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

3

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds that the ALJ applied the correct legal standard, and that her factual

findings are supported by substantial evidence in the record.  Therefore, it finds no error

as alleged in Plaintiff's brief.  Although Plaintiff's Brief does not appear to have been

arranged in any particular order, the court will address each alleged error as that issue

would arise when applying the sequential evaluation process.  Moreover, while the ALJ's

duty to develop the record could affect the analysis at any point in the process, Plaintiff

argues that the ALJ erred in that regard because she did not further develop the record

after she determined to discount Dr. Schroeppel's and LPC (Licensed Professional

Counselor) Roberts's opinions.  Therefore, the court will address the duty to develop the

record after it considers the ALJ's evaluation of the opinions of Dr. Schroeppel and of

Mr. Roberts.  The court begins with the ALJ's credibility determination.

## II.    Credibility

Plaintiff claims the credibility determination is unsupported by substantial record

evidence because the ALJ erroneously relied upon findings of fact which are erroneous,

irrelevant, or improper in a credibility determination.  (Pl. Br. 12-14).  The Commissioner argues that the ALJ properly evaluated Plaintiff's credibility in an exceptionally thorough manner, and that Plaintiff discusses only some of the reasons relied upon by the ALJ. The court agrees with the Commissioner and finds no error in the ALJ's credibility determination.

    **A.**    **Standard for Evaluating Credibility**

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994); <u>but see</u> <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that the record contains evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the

court would justifiably have made a different choice had the matter been before it de

novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also,

Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).   But, " '[f]indings as to

credibility should be closely and affirmatively linked to substantial evidence and not just

a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v.

Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.  Where the

ALJ has reached a reasonable conclusion that is supported by substantial evidence in the

record, the court will not reweigh the evidence and reject that conclusion even if it might

have reached a contrary conclusion in the first instance.

### B        Analysis

The court notes that the ALJ began her credibility analysis on page 7 of her

decision (R. 18), and reached her conclusion on page 10 (R. 21), in which she provided

four reasons to discount the credibility of Plaintiff's allegations of disabling symptoms.

(1) Plaintiff's statements indicate his current unemployment may not be the result of his

impairments; (2) Plaintiff testified his latest employment ended because of incarceration,

not disability; (3) Plaintiff did not seek treatment for his impairments until 2011 despite

acknowledging their existence since 1992; and (4) Plaintiff has worked at the level of

substantial gainful activity in the past in spite of his impairments.  (R. 21).  Each of the

allegedly erroneous, irrelevant, or improper facts upon which Plaintiff's argument relies

refers to the ALJ's discussion of evidence relating to her credibility analysis rather than to

her credibility findings.  Nevertheless, the court has considered how those alleged errors affected the credibility determination.

Plaintiff argues that the ALJ's reference to "gaps" in Plaintiff's mental health treatment was an improper reliance upon a failure to follow a prescribed course of treatment.  As Plaintiff's brief suggests, the Tenth Circuit has found that before an ALJ may rely on a claimant's failure or refusal to follow prescribed treatment, she must consider "four elements:  (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."  Frey v. Bowen, 816, F.2d 508, 517 (10th Cir. 1987) (the Frey test).  However, the Frey test applies only in those situations where a claimant has failed or refused to follow prescribed treatment.  The Tenth Circuit has recognized that the test does not apply in those situations where the ALJ considers what attempts the claimant has made to relieve his allegedly disabling symptoms, and determines that a paucity or a lack of such attempts suggests that the symptoms are not as severe as alleged by the claimant.  See, Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) ("the ALJ properly considered what attempts plaintiff made to relieve his pain--including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling"); Allen v. Apfel, No. 99-3249, 2000 WL 796081, *3 (10th Cir. June 21, 2000).

Here, the first record of treatment for physical problems shows that Plaintiff reported to the University of Kansas Hospital, Emergency Department on April 24, 2011

7

complaining of generalized joint and body pain related to a gunshot wound received in 1992. (R. 300). The first record of treatment for mental problems was on January 31, 2011, when Plaintiff reported for an intake evaluation at the Wyandot Center. (R. 288-92). On April 14, 2011, Plaintiff was discharged because he did not complete his treatment, and that note indicates he dropped out of service. (R. 287). In July 2011, he restarted services (R. 275-81), and was again discharged on November 28, 2011. Again, the note indicates he dropped out of service, but it also indicates that Plaintiff said he "would not be able to pay his fee for tx [(treatment)]." (R. 274). In her summarization of the medical records, the ALJ stated that Plaintiff began mental health treatment in January 2011 and was discharged after three months because he did not participate in services, but that he restarted services in July 2011. She also stated that Plaintiff's "lack of treatment [for physical problems] prior to April 2011, . . . fail[s] to support the extent and severity of the symptoms and limitations that he alleges." (R. 19).

In stating her reasons for discounting the credibility of Plaintiff's allegations, the ALJ stated that Plaintiff "did not seek treatment for his impairments until 2011 even though they have been present since 1992." (R. 21). In context, this finding relates only to treatment for Plaintiff's physical impairments, since it was his gunshot wounds which he received in 1992. None of the four reasons given by the ALJ for discounting Plaintiff's credibility relate to Plaintiff's "gaps" in mental health treatment. Therefore, the ALJ did not erroneously rely upon Plaintiff's alleged refusal to follow prescribed mental health treatment to discount the credibility of his allegations. Moreover, even if

the ALJ were also relying upon Plaintiff's failure to pursue mental health treatment until 2011, that failure also relates only to the fact that before 2011 Plaintiff made no attempts to seek relief from his allegedly disabling mental limitations. That cannot be a failure or refusal to follow prescribed treatment because Plaintiff was not prescribed mental health treatment until he first sought treatment in January 2011. Contrary to Plaintiff's assertions, the ALJ did not rely upon "gaps" in mental health treatment to discount the credibility of Plaintiff's allegations of symptoms. Rather, she merely summarized the course of Plaintiff's mental health treatment after he began that treatment, which was not until January 2011.

Plaintiff's credibility argument addresses none of the four reasons specifically relied upon by the ALJ to discount Plaintiff's credibility. Rather, he points to certain findings made in the ALJ's evaluation of the record evidence, and argues that the record evidence better supports a different finding than that made by the ALJ. Plaintiff's argument in that regard constitutes little more than a request for the court to re-weigh the evidence and substitute its judgment for that of the ALJ. As noted above, the court may not do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172. And, as noted above, the fact that the record evidence might also support a different finding than that reached by the ALJ is irrelevant to the court's review, because the court may not displace the agency's choice between two fairly conflicting views. Lax, 489 F.3d at 1084; see also, Consolo, 383 U.S. at 620. Giving the ALJ's credibility finding the deference it deserves, Plaintiff has shown no error in that regard.

**III.    Evaluation of Opinion Evidence**

Plaintiff argues that despite the ALJ's determination to accord "the most weight" to Dr. Schroeppel's treating source opinion, the ALJ erred by failing to adequately account for Dr. Schroeppel's opinion that Plaintiff has difficulty concentrating.  He also argues that the ALJ erroneously rejected the opinion of Mr. Roberts that Plaintiff is moderately limited in the abilities to interact with the public, to accept instruction and respond appropriately to criticism from supervisors, and to get along with coworkers or peers.  The Commissioner argues that the ALJ's RFC assessment is supported by substantial evidence, and that the ALJ properly considered Mr. Roberts's opinion, and relied in large part on the opinion of Plaintiff's treating physician, Dr. Schroeppel.

**A.    Standard for Evaluating Opinion Evidence**

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R.

10

§ 404.1527 and 416.927." Watkins, 350 F.3d at 1300.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists, the Commissioner

11

promulgated Social Security Ruling (SSR) 06-3p.  West's Soc. Sec. Reporting Serv.,

Rulings 327-34 (Supp. 2014).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id.  Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the regulatory

factors for evaluating medical opinions; id. at 331-32(citing 20 C.F.R. §§ 404.1527,

416.927); and explains that the ALJ "generally should explain the weight given to

opinions from these 'other sources,' or otherwise ensure that the discussion of the

evidence in the . . . decision allows a claimant or subsequent reviewer to follow the

adjudicator's reasoning, when such opinions may have an effect on the outcome of the

case."  Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007)

(remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

### B.      Dr. Schroeppel's Opinion

The ALJ afforded "the most weight" to the treating source opinion of Dr.

Schroeppel, and explained specifically which of Dr. Schroeppel's limitations he rejected,

and why:

Dr. Schroeppel also opines that the claimant is unable to balance, but the claimant's treatment notes following this opinion reflect increased stability with the orthotics, supporting that the claimant is able to balance on an occasional basis (Exhibits 14F at 3: 13F at 3 [(R. 331, 340)]).  Dr. Schroeppel opined that the claimant can never climb, and while the undersigned agrees that the claimant can never climb ladders, ropes or scaffolds, his ability to walk downstairs to the basement to do laundry supports that he is able to climb ramps and stairs on an occasional basis (Exhibit 14F at 3; Claimant Testimony [(R. 340)]).  Dr. Schroeppel also limited the claimant to frequent manipulative movements along with frequent seeing, hearing and speaking (Exhibit 14F at 3 [(R. 340)]).  The form filled out by Dr. Schroeppel does not have a constant box, so it is unclear if he meant to limit claimant in those areas.  Either way, the claimant's underlying treatment notes do not support any limitations in these areas and thus they are not reflected in the above residual functional capacity.  The claimant's use of orthotics does not interfere with his ability to perform work as it is described in the above residual functional capacity, and the claimant's possible medication side effects were taken into account and are accommodated in the limitations assessed in the above residual functional capacity.

(R. 21-22).  As suggested in the quotation above, the ALJ had also discussed Dr.

Schroeppel's opinion regarding medication side effects earlier in the decision:

The claimant's physician notes that he may experience some somnolence or decreased concentration from his medication (Exhibit 14F at 3 [(R. 340)]).  The limitation to unskilled work described above accommodates for any medication side effects.  In addition, the limitations regarding hazards, heights and climbing act as safety precautions to accommodate for any medication side effects.  The record as a whole does not support any further limitations in the claimant's functional abilities.

(R. 21).

Plaintiff argues that the ALJ's limitation to "tasks that can be learned in less than

30 days, involving no more than simple work-related decisions and few workplace

changes" (R. 17), does not address sleepiness or an inability to concentrate on tasks after

13

they have been learned, and that remand is necessary to account properly for Plaintiff's difficulty concentrating.

The court notes that Dr. Schroeppel did not opine that Plaintiff has sleepiness or difficulty concentrating. Rather, in response to the question whether Plaintiff's pain, use of, or side effects of medication cause any limitations, Dr. Schroeppel responded, "Neurontin - possible somnolence or ↓ concentration." (R. 340) (emphasis added). Dr. Schroppel indicated that Plaintiff might have somnolence or decreased concentration because they are potential side effects of neurontin, and Plaintiff takes neurontin. But, he did not opine that Plaintiff has those side effects. Nor did he definitively opine that Plaintiff has difficulty concentrating.

Plaintiff's argument that the RFC limitations assessed "do not address an inability to concentrate on tasks once they have been learned" (Pl. Br. 10) is merely a red herring, because Plaintiff does not point to any record evidence showing an inability to concentrate. At most, the record suggests decreased concentration. (R. 279) (7/13/2011, moderately diminished attention/concentration); (R. 290) (1/31/2011, mildly diminished attention/concentration); (R. 340) (possible decreased concentration). The ALJ found that the limitation to unskilled work accommodates any medication side effects, and Plaintiff points to no record evidence which precludes such a finding.

Plaintiff states that the RFC limitations do not account for somnolence. But, once again he points to no evidence supporting his assertion. On the other hand, the ALJ noted that although Plaintiff suggested problems with sleepiness, he also testified that he sleeps

14

through the night with his medication, and for that reason the ALJ "has not provided for any limitations for symptoms resulting from sleep difficulties." (R. 21). Moreover, the ALJ specifically found that the limitation to unskilled work and "the limitations regarding hazards, heights and climbing act as safety precautions to accommodate for any medication side effects" (which include possible somnolence), and that the "record as a whole" does not support further limitations. (R. 21). Plaintiff points to a single treatment note, dated September 14, 2011, in which an intern wrote that "cl[ient] seemed to trail off at times and lose focus during session, speaking softly & incoherently at times." (Pl. Br. 10) (citing R. 270) ("Participants - client, client's daughter, intern"). This one-time suggestion by an MA intern (R. 271) is insufficient to overcome the ALJ's reliance upon Plaintiff's testimony and the record as a whole regarding sleepiness and decreased concentration. Plaintiff establishes no error in the ALJ's evaluation of Dr. Schroeppel's opinion.

### C.  Mr. Roberts's Opinion

The ALJ afforded "little weight" to the opinion of Mr. Roberts contained in a Medical Source Statement - Mental, prepared on December 9, 2011. (R. 22) (citing Ex. 7F (R. 294-95)). The ALJ once again explained the bases for her determination:

> Mr. Roberts opines that the claimant has moderate limitations in his ability to interact with the public. However, as discussed above, the claimant does not report any problems going out into the public on his own (Claimant Testimony; Exhibit 10E at 10 [(R. 220)]). He testified that he goes to the store and is able to take public transportation, demonstrating his ability to be in public without difficulty. Mr. Roberts also opines that the claimant has moderate limitations in his ability to accept instructions and to respond

15

appropriately to criticism from supervisors.  However, the claimant's
mother reports that he is able to follow directions and gets along okay with
authority figures, indicating that he is capable of following instructions and
dealing with supervisors (Exhibit 9E at 8-9 [(R. 208-09)]).  In addition, the
claimant did not testify to having any problems with superiors or following
instructions in his prior position as a residential helper.  Lastly, Mr. Roberts
opines that the claimant has moderate limitations in his ability to get along
with coworkers or peers without distracting them or exhibiting behavioral
extremes.  The claimant's treatment notes reflect that the claimant is well
adjusted, answering questions appropriately and that he is pleasant (Exhibits
10F at 2; 12F at 2; 9F at 5-6 [(R. 307-08, 311, 323)]).  These treatment
notes support that the claimant is able to maintain socially appropriate
behavior when he is motivated to do so.  Thus, the underlying treatment
notes do not support that the claimant has any limitations in social
functioning and thus the undersigned affords little weight to the opinion of
Mr. Roberts.

(R. 22-23) (citations to Mr. Roberts's medical source statement omitted).

Plaintiff argues that Mr. Roberts's opinion is supported by substantial record

evidence, and points to the evidence which, in his view, supports the opinion.  (Pl. Br. 10-

11).  The vast majority of the record evidence relied upon by Plaintiff is merely his report

of his own symptoms and problems.  Even the medical records cited reflect his reports as

recorded by the medical personal.  The problem with such reliance is that the ALJ found

Plaintiff's allegations not credible, and the court affirmed that determination above.

Therefore, Plaintiff's reports cannot be relied upon to support Mr. Roberts's opinion.

Plaintiff acknowledges that the ALJ is correct in his findings regarding Plaintiff's

mother's statements, but he attempts to point out further statements by his mother that he

is "moody at times," that he can pay attention and follow instructions "unless he is in bad

pain," and that he "does not handle stress well at times," thereby suggesting that Plaintiff

16

might have greater limitations tending to support Mr. Roberts's opinion.  (Pl. Br. 11)

(emphases added).  The fact that Plaintiff's mother thinks he is occasionally worse in his

presentment is not sufficient to overcome her statements regarding his condition

generally.  The mere fact that Plaintiff has been diagnosed with mental impairments says

nothing regarding the severity of his limitations resulting from those impairments.

Finally, to the extent Plaintiff asks the court to reweigh the evidence regarding Mr.

Roberts's opinion and substitute its judgment for that of the ALJ, it cannot do so as

discussed above.  Plaintiff demonstrates no error in the ALJ's evaluation of Mr. Roberts's

opinion.

## IV.    Duty to Develop the Record Regarding Mental Limitations

Plaintiff asserts that, based upon SSR 96-8p, the "ALJ must 'make every

reasonable effort to ensure that the file contains sufficient evidence to assess RFC.' "  (Pl.

Br. 12) (quoting SSR 96-8p).  He points out that other than Mr. Roberts's opinion, "there

is no other opinion of record" regarding Plaintiff's mental impairments and limitations,

and, therefore, the ALJ should have obtained a consultative examination regarding

Plaintiff's mental impairments.  (Pl. Br. 11).  He argues that the need for additional

evidence is clearly established in the record because the ALJ discounted Mr. Roberts's

opinion and because there is "no medical evidence supporting the ALJ's RFC as to

Plaintiff's functional limitations related to his 'severe' mental impairments."  (Pl. Br. 12).

The Commissioner argues that "the ALJ actually relied in large part on the opinion of one

of Plaintiff's treating physicians, Dr. Schroeppel, in forming the RFC."  (Comm'r Br. 11-

12).  In his Reply Brief, Plaintiff cites the law of the Eighth Circuit for the proposition that medical opinion evidence must be found in the record which supports the ALJ's RFC assessment, and argues that since the ALJ discounted Mr. Roberts's opinion, that left no opinion supporting the RFC assessment, and remand is necessary for the Commissioner to order a psychological consultative evaluation.  (Reply 2-3) (citing case law from the Eighth Circuit, and the Eastern and Western Districts of Missouri).  The court finds no error in the ALJ's failure to more fully develop the record regarding Plaintiff's mental impairments.

### A.      Standard for Evaluating the ALJ's Duty to Develop the Record

The Commissioner "has broad latitude in ordering consultative examinations."

Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).

> [But, t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.  This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented.  The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.

> Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993) (citations, quotations, and brackets omitted).  Further, under 20 C.F.R. § 404.1512(e), "[w]hen the evidence [the agency] receive[s] from [a claimant's] treating physician or psychologist or other medical source is inadequate for [the agency] to determine whether [the claimant is] disabled,

[the agency] will need additional information to reach a determination or a decision." [1]

Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008).

> "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial.  Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists."  If []he does so, then the ALJ's duty to order a consultative examination arises.  "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment."

Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)) (citations omitted).

### B.    Analysis

Plaintiff argues that the ALJ had a duty to order a consultative psychological examination in this case because after the ALJ discounted Mr. Roberts's opinion, which left no opinion supporting the ALJ's RFC assessment.  That is not the standard in the Tenth Circuit.  In this Circuit, when the plaintiff has satisfied his burden to present evidence to suggest a reasonable possibility that a severe impairment exists, "it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment."

Hawkins, 113 F.3d at 1167 (emphases added).

---

[1] 20 C.F.R. § 404.1512(e) was amended effective February 23, 2012 (before the decision at issue was issued) to eliminate this provision from the regulation.  77 Fed. Reg. 10,651, 10,655 (Feb. 23, 2012).

Here, the ALJ found that Plaintiff has a severe "mental impairment variously diagnosed to include depression, anxiety disorder . . . and personality disorder." (R. 15). Nevertheless, Plaintiff implies that the ALJ attempted to undermined Plaintiff's allegation of a severe mental impairment when she cited that the treatment notes fail to reflect a "flat affect." (Pl. Br. 13) (citing R. 19). However, the significance of the ALJ's citation was not that Plaintiff's mental impairments are not severe (indeed, she had already found that the mental impairments are severe), but that the treatment notes "do not reflect any significant signs of depression, such as <u>flat affect</u> or <u>psychomotor retardation</u>." (R. 19). The ALJ found that Plaintiff has severe mental impairments. Therefore, the issue of mental impairment had already been resolved. and another examination is neither necessary nor helpful in that regard.

But, Plaintiff argues that a consultative psychological examination is necessary because the ALJ rejected the only medical opinion regarding mental limitations, and therefore has no basis to assess mental limitations. Plaintiff's appeal to case law from the Eighth Circuit, and from the Eastern and Western Districts of Missouri for the proposition that medical opinion evidence must be found in the record which supports the ALJ's RFC assessment is unavailing here, because that is not the law in the Tenth Circuit. To be sure, the Eighth Circuit long ago held that RFC is a medical question and medical evidence is required to establish how a claimant's impairments affect his RFC. <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001). "Therefore, although in evaluating [a claimant's] RFC, <u>see</u> 20 C.F.R. § 404.1545(c), the ALJ was not limited to considering

medical evidence, we believe that the ALJ was required to consider at least some

supporting evidence from a professional."  Id.

However, the Tenth Circuit has reached a different conclusion.  Just two years ago,

Chief Judge Briscoe of that court addressed an argument virtually identical to Plaintiff's

argument here.

> McDonald contends that the ALJ's RFC finding is not supported by any
> evidence because he rejected all of the medical opinions on the severity of
> her impairments and her functional limitations.  She maintains that a mental
> RFC is essentially a medical determination outside of the ALJ's expertise,
> asserting that "[t]he ALJ is not able to determine from his own review of
> statements in the medical record, or the claimant's daily activities, whether
> a specific mental impairment even exists, much less whether it is moderate
> or marked in severity."  Aplt. Opening Br. at 30.  In particular, McDonald
> argues that an ALJ is not capable of determining, without a corresponding
> medical opinion, a person's mental capacity to perform in a fulltime work
> setting.  By doing so, McDonald claims, the ALJ improperly substituted his
> own lay opinion for that of the medical experts.

McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012).  The court rejected

> McDonald's contention that an ALJ is not competent, in the absence of a
> medical opinion, to assess the severity of mental symptoms and determine
> the extent of the limitations that result based on the evidence in the
> claimant's medical records, her daily activities, and her positive response to
> medications.  That is precisely the type of evidence an ALJ should consider
> in determining a claimant's RFC.  An ALJ makes that assessment based on
> all the evidence in the case record, both medical and non-medical.  See 20
> C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3); see also SSR 96–8p, 1996
> WL 347184, at *5 (1996) (listing types of relevant evidence ALJ should
> consider); 20 C.F.R. §§ 404.1520a(b)-(d), (e)(4), 416.920a(b)-(d), (e)(4)
> (describing administrative process for evaluating degree of functional
> limitations and severity of mental impairments and providing that the ALJ's
> written decision must include these determinations).

Id. at 885-86.  Although McDonald is an unpublished decision of the Tenth Circuit not

controlling on this court, it is specifically based upon a controlling opinion of the Circuit

decided just one month earlier.  Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012).

Although Judge Porfilio wrote the opinion in Chapo, the court notes that Chief Judge

Briscoe was also on the panel that unanimously decided that case.

 The McDonald court explained how the Chapo opinion required the holding in

McDonald:

> McDonald's "contention rests on an unduly narrow view of the role of the
> administrative factfinder in social security disability proceedings." Chapo v.
> Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).  In Chapo, we rejected the
> argument that the limitations in an ALJ's mental RFC assessment must
> always be supported by a specific medical opinion, noting that "there is no
> requirement in the regulations for a direct correspondence between an RFC
> finding and a specific medical opinion on the functional capacity in
> question."  Id.  To the contrary, "the ALJ, not a physician, is charged with
> determining a claimant's RFC from the medical record."  Id. (quotation and
> alteration omitted); see also 20 C.F.R. §§ 404.1546(c), 416.946(c)
> (providing ALJ is responsible for assessing RFC).  And the ALJ's RFC
> assessment is an administrative, rather than a medical, determination.  See
> Social Security Ruling (SSR) 96–5p, 1996 WL 374183, at *5 (July 1996)
> ("The term 'residual functional capacity assessment' describes an
> adjudicator's finding about the ability of an individual to perform work-
> related activities.  The assessment is based upon consideration of all
> relevant evidence in the case record.... [A] medical source statement must
> not be equated with the administrative finding known as the RFC
> assessment.").

McDonald, 492 F. App'x at 885.

 The law of the Tenth Circuit recognizes that an RFC assessment is an

administrative rather than a medical determination, that medical evidence is not required

for each limitation assessed by the ALJ and that another medical opinion is not necessary

merely because an ALJ rejects the opinions already contained within the record.

Therefore, Plaintiff has not shown a duty to secure a consultative examination.

Plaintiff has shown no error in thie decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision.

Dated this 22nd day of September 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**